## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TERRY FABRICANT on behalf of himself and others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br><br>THE MONEY SOURCE INC.<br><br>    Defendant. | Case No. 18-2449 |

## CLASS ACTION COMPLAINT

### Preliminary Statement

1.      Plaintiff Terry Fabricant ("Plaintiff"), brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs.*, *LLC,* 132 S. Ct. 740, 745 (2012).

2.      The TCPA is designed to protect consumer privacy by prohibiting unsolicited, autodialed telemarketing calls to cellular telephones, unless the caller has the "prior express written consent" of the called party.

3.      Plaintiff alleges that The Money Source Inc. ("Money Source" or "Defendant") made automated telemarketing calls to him using equipment prohibited by the TCPA, even though Money Source had no business relationship with him and did not have his consent to make the call.

4.      Because the call to Plaintiff was transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who were sent the same illegal telemarketing call.

5.     A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

6.     Plaintiff Terry Fabricant is an individual resident of California.

7.     Defendant The Money Source, Inc. is a New York corporation headquartered in Melville, NY, in this District.

## Jurisdiction & Venue

8.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("hereinafter referred to as CAFA") codified as 28 U.S.C. 1332(d)(2).  The matter in controversy exceeds $5,000,000.00, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of at least tens of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA.  Further, Plaintiff alleges a national class, which will likely result in at least one Class member from a different state.

9.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States.

10.     This Court has personal jurisdiction over Defendant because they operate, conduct, engage in, and/or carry on, business activities in this District and a substantial part of the wrongful acts alleged in this Complaint were committed in New York.

11.     Venue is proper under 28 U.S.C. § 1391(b)(1) because the Defendant is a resident of this District.

## TCPA Background

12.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the

telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

13.     When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3). By 2003, telemarketers were calling 104 million Americans every day, abetted by the proliferation of new and more powerful autodialing technology. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

14.     Unfortunately, the problems Congress identified when it enacted the TCPA have grown only worse in recent years:

- "Month after month, unwanted [communications], both telemarketing and informational, top the list of consumer complaints received by the [Federal Communications] Commission." *In re Rules and Regulations Implementing the TCPA of 1991*, 30 FCC Rcd. 7961, 7991 at ¶ 1 (July 10, 2015).

- "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." FCC Chairman Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016) (https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls).

- "The FTC receives more complaints about unwanted calls than all other complaints combined." Comment of the Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the TCPA of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at p. 2; FCC 16-57 (June 6, 2016) (https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf ).

- In 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. For every month in the fiscal year, robocalls made up the majority of consumer complaints about Do Not Call violations. *FTC Releases FY 2017 National Do Not Call Registry Data* (December 18, 2017) (https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-national-do-not-call-registry-data-book-dnc)

**The TCPA Prohibits Automated Telemarketing Calls**

15.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service."  *See* 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

16.     According to findings by the FCC, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

17.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used."  *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

18.     In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

**Factual Allegations**

19.    Money Source is a company that provides funding sources for consumers. However, to generate sales, Money Source has relied on illegal telemarketing.

20.    Money Source's telemarketing efforts include the use of automated dialing equipment to send automated calls.

21.    On January 22, 2018, January 24, 2018 and February 1, 2018, the Plaintiff received telemarketing calls on his cellular telephone, (818) 266-XXXX.

22.    The telemarketing calls began with a distinctive click and pause after the Plaintiff answered.

23.    The distinctive click and pause is evidence of the use of a predictive dialer, which uses an algorithm to "predict" when telemarketing agents will be available to field the call.

24.    In fact, while waiting for a human being to arrive on the line, the Plaintiff said "hello" into his telephone with no response.

25.    Furthermore, when a human being finally appeared on the other end of the telephone, the Plaintiff received a generic and scripted pitch indicating a calling campaign done *en masse* with automated equipment.

26.    These facts, as well as the geographic distance between the Plaintiff and the Defendant and the fact that this call was part of a nationwide telemarketing campaign, demonstrate that the calls were made using an automatic telephone dialing system ("ATDS") as that term is defined in 47 U.S.C. § 227(a)(1).

27.    Furthermore, predictive dialers have been found to be ATDS under the TCPA.

28.    Following the scripted pitch, the Plaintiff received  e-mails from Edgar.Pacheco@theMoneySource.com, Hunter.Sokolovic@theMoneySource.com, and

Bernice.Payne@theMoneySource.com.

29.     These individuals are employees of the Defendant.

30.     Prior to the unsolicited calls, Plaintiff had never done any business with Money Source.

31.     Confirming this, Ms. Payne provided to the Plaintiff a 7-slide Microsoft Power Point presentation about the Defendant's offering because of the telemarketing call.

32.     Furthermore, Ms. Payne sent the Plaintiff a Microsoft Word survey regarding the Defendant's promotion following the telemarketing call.

33.     Money Source did not have Plaintiff's prior express written consent to make these calls.

34.     In fact, before filing this lawsuit, Plaintiff wrote to Money Source asking whether they had his prior express written consent to make the calls, but Money Source did not provide any evidence of consent.

35.     Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls, and their privacy was improperly invaded.

36.     Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance, and disturbed the solitude of Plaintiff and the class.

## Class Action Allegations

37.     As authorized by Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of all other persons or entities similarly situated throughout the United States.

38.     The class of persons Plaintiff proposes to represent includes:

All persons within the United States to whom: (a) Defendant and/or a third party acting on their behalf made one or more non-emergency telephone calls; (b) promoting Defendant's products or services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial (the "Class").

39.     Excluded from the Class are Defendant, any entities in which Defendant has a controlling interest, Defendant's agents and employees, any Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

40.     The proposed Class members are identifiable through phone records and phone number databases.

41.     The automated technology used to contact Plaintiff is capable of contacting hundreds of thousands of people a day, and so the potential Class members number in the thousands, at least.  Individual joinder of these persons is impracticable.

42.     Plaintiff is a member of the proposed Class.

43.     There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

    a.     Whether Money Source used an automatic telephone dialing system to make the calls at issue;

    b.     Whether Money Source placed telemarketing calls without obtaining the recipients' valid prior express written consent;

    c.     Whether Money Source's violations of the TCPA were negligent, willful, or knowing; and

    d.     Whether Plaintiff and the Class members are entitled to statutory damages because of Money Source's actions.

44.     Plaintiff's claims are based on the same facts and legal theories as the claims of

all Class members, and therefore are typical of the claims of Class members, as the Plaintiff and Class members all received telephone calls through the same or similar dialing system on a cellular telephone line.

45.     Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions. In fact, Plaintiff has foregone a simpler path to recovery by filing this matter as a putative class action, as opposed to an individual claim.

46.     The actions of Money Source are generally applicable to the Class and to Plaintiff.

47.     Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Money Source and/or its agents.

48.     The likelihood that individual Class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case and given the small recoveries available through individual actions.

49.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for Class membership described above.

### Legal Claims

### Count One:
### Violation of the TCPA, 47 U.S.C. § 227(b)

50.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set

forth herein.

51.     The foregoing acts and omissions of Money Source and/or its affiliates, agents, and/or other persons or entities acting on Money Source's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class using an ATDS.

52.     As a result of Money Source's and/or its affiliates, agents, and/or other persons or entities acting on Money Source's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

53.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Money Source and/or its affiliates, agents, and/or other persons or entities acting on Money Source's behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

54.     Defendant's violations were negligent, willful, or knowing.

## **Relief Sought**

For himself and all class members, Plaintiff requests the following relief:

A.      Certification of the proposed Class;

B.      Appointment of Plaintiff as representative of the Class;

C.      Appointment of the undersigned counsel as counsel for the Class;

D.      A declaration that Money Source and/or its affiliates, agents, and/or other related

entities' actions complained of herein violate the TCPA;

     E.     An order enjoining Money Source and/or its affiliates, agents, and/or other related

entities, as provided by law, from engaging in the unlawful conduct set forth herein;

     F.     An award to Plaintiff and the Class of damages, as allowed by law;

     G.     Leave to amend this Complaint to conform to the evidence presented at trial; and

     H.     Orders granting such other and further relief as the Court deems necessary, just,

and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**


           Plaintiff,
           By Counsel,


Dated: April 25, 2018     By:  */s/ Kim E. Richman*
           Kim E. Richman
           Email: krichman@richmanlawgroup.com
           RICHMAN LAW GROUP
           81 Prospect Street
           Brooklyn, New York 11201
           Telephone: (212) 687-8291
           Facsimile: (212) 687-8292

           Anthony Paronich
           Email:  anthony@broderick-law.com
           BRODERICK & PARONICH, P.C.
           99 High Street, Suite 304
           Boston, Massachusetts  02110
           Telephone: (508) 221-1510
           *Subject to Pro Hac Vice*

           Matthew P. McCue
            The Law Office of Matthew P. McCue
           1 South Avenue, Suite 3
           Natick, Massachusetts 01760
           (508) 655-1415
           mmccue@massattorneys.net
           *Subject to Pro Hac Vice*